IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CV-368-RJ

| | |
|---|---|
| AMY COLLINS,<br><br>    Plaintiff/Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>    Defendant. | ORDER |

  This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-9, -13]. Claimant Amy Collins ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

  Claimant protectively filed an application for a period of disability and DIB on October 19, 2022, alleging disability beginning October 13, 2022. (R. 11, 219–25). The claim was denied initially and upon reconsideration. (R. 11, 94–112). A hearing before an Administrative Law Judge ("ALJ") was held on April 24, 2024, at which Claimant, who was represented by an attorney, and a vocational expert ("VE") appeared and testified. (R. 55–93). On May 24, 2024, the ALJ issued a decision denying Claimant's request for benefits. (R. 8–29). On December 19, 2024, the Appeals

Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

2

forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999); *Newton v. Astrue*, 559 F. Supp.2d 662, 667 (E.D.N.C. 2008); *Andrews v. Bisignano*, No. 2:24-CV-63-RJ, 2025 WL 2992720, at *2 (E.D.N.C. Oct. 24, 2025). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since October 13, 2022, the alleged onset date. (R. 13). Next, the ALJ

3

determined Claimant had the severe impairments of Crohn's disease, status post-surgery; lumbago/sciatica/degenerative disc disease; obesity; and degenerative joint disease/osteoarthritis. (R. 13–15). The ALJ also found several conditions in Claimant's medical history for which she had been previously treated to be non-severe and found that rheumatoid arthritis and fibromyalgia/myofascial type/chronic pain syndrome were not medically determinable impairments. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's non-severe mental impairments of anxiety and depression have resulted in mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself. (R. 14–15). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of light work.[1] (R. 18–23). In making this assessment, the ALJ found Claimant's statements about her limitations to be not persuasive of disability based on the medical and other evidence in the record. (R. 19). At step four, the ALJ concluded Claimant was able to perform her past relevant work as an insurance sales agent. (R. 23).

## V. DISCUSSION

Claimant contends that the RFC failed to account for her need for additional breaks, off-

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

task time, absences, and position changes due to the effects of her Crohn's disease. Pl.'s Br. [DE-9] at 13–29. Defendant counters that the ALJ's decision is adequately explained and supported by substantial evidence. Def.'s Br. [DE-13] at 8–20.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

### A. Crohn's Disease

In formulating the RFC, the ALJ briefly summarized Claimant's testimony from the administrative hearing regarding the limiting effects of her Crohn's disease, discussed Claimant's treatment records and the opinion evidence, and explained that Claimant's symptoms had improved with treatment to the point that she could perform light work. (R. 19–22). The ALJ

5

reasoned as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the claimant testified she stopped working in October 2022 because she was missing too much work when she developed perianal Crohn's disease in addition to her longstanding Crohn's colitis, which required frequent treatment. She further stated she was taking breaks because she had an abscess that was draining, and she had to change clothes. However, she uses female incontinence products and takes a change of clothing with her and, while she initially had some complications with fistulas requiring the placement/replacement/removal of setons with drainage by June 2023, she reported doing much (89%) better. The claimant further testified to having significant pain, even without abscess, that could, but have not returned, and treatment notes show her feeling only little bit tender in the posterolateral position in July 2023, and having tolerable discomfort from May rectal abscess repair in August 2023 (Ex. 7F/13). While she subsequently reported increase in symptoms (abdominal pain and diarrhea urgency) after doing well on Humera for Crohn's perianal disease and Entyvio for Crohn's colitis, there had also been lapses in administration of biologics, in part due to insurance denials. In addition, the results of a March 2024 colonoscopy are negative for significant inflammation, significant endoscopic ileitis, or evidence of collagenous colitis, and she was set to trial a new biologic the day after the hearing.

(R. 21). The ALJ also specifically found that "[a]ny potential time off task due to fatigue, tiredness, or need to use the restroom would be addressed within customary work tolerances, which the vocational expert testified is no more than 10% of the workday along with customary breaks." (R. 22). Claimant takes issue with several aspects of the ALJ's reasoning regarding time off task due to bathroom breaks, including the ameliorative effect of Claimant using pads and having a change of clothes, improvement in her symptoms, imaging results, the potential effectiveness of a new treatment, and the failure to make specific findings regarding the duration and frequency of her bathroom breaks. Pl.'s Br. [DE-9] at 17–23. However, because the ALJ's findings are sufficiently explained and supported by substantial evidence, the court finds no error.

The ALJ acknowledged that Claimant stopped working due to unmanageable symptoms from perianal Crohn's disease and colitis. (R. 21). However, the ALJ determined that, after

6

Claimant underwent medical procedures in June and August 2023, her complications with fistulas from perianal disease that previously caused significant pain, bleeding, and drainage had largely abated with treatment, (R. 19–22), and the medical records cited by the ALJ support the decision in this regard.

At a January 24, 2023, gastroenterology follow-up for Claimant's Crohn's disease, she reported diarrhea and bleeding were much improved, although she still had 4–6 loose, watery stools that day, but her main complaint was painful knots near the ischial tuberosities, which she attributed to an abscess or fistula. (R. 20, 410–14). At a March 7 gastroenterology consult, Claimant reported worsening abdominal pain and bloody bowel movements, as well as perianal symptoms, which were noted to be concerning for worsened luminal and perianal disease; she had recently undergone a seton placement; and a colonoscopy and pelvic MRI were ordered prior to consideration of a change in therapy. (R. 357, 361). A March 13 colonoscopy demonstrated perianal fistula on exam and a small transverse colon polyp, but the entire examined colon was normal, the examined portion of the ileum was normal, and there was no evidence of Crohn's disease. (R. 20, 386). On March 20, Claimant reported still having pain at an appointment with her colon and rectal surgeon, but her last few examinations were described by Dr. Payne as "somewhat nonproductive either very little pus or in none [sic] or not enough to really explain her discomfort." (R. 20, 400, 403, 405–08). Dr. Payne had nothing additional to offer in the way of treatment but noted her gastroenterologist may change her Humira dosage and was considering a referral to Cleveland for stem cells that could be useful for another opinion on anal pain and fistulas. (R. 400).

An April 21 treatment note stated that Claimant reported significant perianal pain and discomfort, as well as intermittent drainage (up to 1 pad per day at times), and her Humira dosing

7

was increased to weekly due to low levels of Humira and persistent symptoms, although the change was delayed due to insurance until early May. (R. 20, 633–34). Claimant underwent a seton placement procedure on May 19, but due to ongoing pain the left seton was removed on June 2. (R. 20, 692). On June 6, Claimant reported doing much better since the removal and being able to "sit, drive, etc.," she had not noticed any type of discharge since the removal, and she said she felt "89% better." (R. 20, 692–96). On August 12, Claimant had a rectal exam under anesthesia with treatment of anal fistula, (R. 648–51), and on August 31, she reported "some tolerable discomfort from rectal abscess repair in May." (R. 20, 679). A September 7 postop colorectal surgery note regarding her status post treatment of anal fistula with fistulotomy stated that overall Claimant was doing well, her bowel function had returned back to normal without any continence issues, her surgical sites were healing well, and she was directed to follow-up as needed. (R. 647). On November 9, Claimant again indicated that she felt better after her fistulotomy. (R. 21, 776). When asked at the April 24, 2024 administrative hearing whether her symptoms improved after the August 2023 procedure, Claimant responded that she did not have a fistula or abscess at that time, but she could not be assured "they won't come back either." (R. 77).

Here, there is substantial evidence in the record to support the ALJ's finding that Claimant's symptoms from perianal Crohn's disease were well-controlled after her June and August 2023 procedures. "[I]f a symptom can be controlled, within reason, through medication or treatment then it is not disabling." *Parker v. Bowen*, 838 F.2d 467 (4th Cir. 1988) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)); *Newton*, 559 F. Supp.2d at 674; *Carpenter v. Dudek*, No. 5:24-CV-196-FL, 2025 WL 893803, at *4 (E.D.N.C. Mar. 24, 2025). Speculation that abscesses or fistula may reoccur in the future is insufficient to carry Claimant's burden of demonstrating that she could not perform light work during the relevant period. Accordingly, the court can trace the

8

ALJ's reasoning and finds no error in the ALJ's consideration of Claimant's perianal Crohn's disease.

Relatedly, Claimant argues that the ALJ should have performed a function-by-function analysis of her ability to sit because she had pain that feels like "sitting on matches" with an active fistula and pain from spasming even in the absence of a fistula. Pl.'s Br. [DE-9] at 27–29. The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Here, as explained above, substantial evidence supports the ALJ's determination that Claimant's symptoms from perianal Crohn's disease were well-controlled after her June and August 2023 procedures, and the May 2023 treatment note and opinion of Dr. Jain, (R. 408, 639–41, 705–06), cited by Claimant, predate those procedures. Claimant's testimony that she still had significant pain and difficulty sitting, (R. 77), is not supported by the record, and even prior to the procedures she reported needing only up to one pad per day at times due to intermittent draining. *See* (R. 633–43) (April 21, 2023 – Claimant reported intermittent draining); (R. 692–96) (June 6, 2023 - Claimant reported doing much better since the seton removal and being able to "sit, drive, etc.," she had not noticed any type of discharge since the removal, and she said she felt "89% better."); (R. 647–51) (August 12, 2023 - Claimant had a rectal exam under anesthesia with treatment of anal fistula, and a September 7, 2023 postop colorectal surgery note, re: status post treatment of anal fistula with fistulotomy, stated that overall Claimant was doing well, her bowel function had returned back to normal without any continence issues, her surgical sites were healing well, and she was directed to follow-

9

up as needed); (R. 776) (November 9, 2023 - Claimant again indicated that she felt better after her fistulotomy). Furthermore, although Dr. Mastrangelo's March 12, 2024 opinion was that Claimant could sit for less than six hours a day, he did not check the box indicating that she required a sit stand option to relieve pain or discomfort, (R. 852), and the ALJ found this opinion unpersuasive because Claimant was doing well after the seton issue was addressed, (R. 22). Finally, Claimant's reliance on *Dowling* is misplaced. In *Dowling*, the ALJ "barely mentioned Appellant's sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions," 986 F.3d at 388, whereas here the ALJ acknowledged Claimant's testimony that she needed to change positions while sitting due to pain and discomfort, as well as Claimant's reports of pain and rectal spasms from fistula in the medical records. (R. 19–21). Accordingly, the court can trace the ALJ's reasoning despite the lack of a function-by function analysis of Claimant's ability to sit and finds no error in the RFC in this regard.

The ALJ also discussed Claimant's Crohn's colitis, which caused abdominal pain and diarrhea urgency resulting in frequent bathroom use. (R. 19–22). Claimant had suffered from colitis since she was 16 years old, but it was relatively well controlled, even after she developed perianal disease in 2022. (R. 19–20); (R. 416) (Dec. 5, 2022 treatment note stating diarrhea stopped, bleeding was minimal, and colitis was under control except for fistula); (R. 410–11) (Jan. 24, 2023 treatment note stating diarrhea and bleeding were much improved). In July 2023, Claimant reported having 4–6 loose stools a day with blood, but it was noted that a colonoscopy "did not show much in the way of colitis" and a rectal exam did not reveal evidence of Crohn's disease. (R. 20, 684). On November 9, Claimant reported increased diarrhea and urgency along with abdominal pain, but there had been a lapse in administration of Humira (because of surgery) and Entyvio (due to denial by Insurance). (R. 21, 776). After approval by insurance, Claimant

10

was restarted on Entyvio, continued on Humira, and there was discussion of switching to Rinvoq if she did not respond well to the reintroduction of Entyvio. (R. 782). On December 15, Claimant's medication was switched to Rinvoq after her insurance company denied continue use of Entyvio. (R. 21, 810–22). On March 12, 2024, it was noted that Claimant's Crohn's was aggravated by lack of treatment after doing "rather well" on the combination of Humira for Crohn's Perianal disease and Entyvio for Crohn's colitis, she had a poor response to Rinvoq resulting in frequent diarrhea, and a change to Skyrizi would be considered after additional testing. (R. 21, 864–71). That same day Claimant's doctor completed an RFC evaluation stating that her Crohn's colitis and perianal disease was not controlled with treatment, and she was limited by pain and incontinence (frequent diarrhea). (R. 22, 850–58). However, a March 20 colonoscopy showed no significant endoscopic ileitis or colitis. (R. 21, 888–89). At the April 24, 2024 administrative hearing, Claimant testified she would start Skyrizi the following day, (R. 21, 66), and a July 18, 2024 treatment note submitted to the Appeals Council by Claimant stated that she felt better on Skyrizi but still had frequent bowel movements (4–6 loose stools a day). (R. 30–38).

The ALJ thoroughly discussed all the evidence and acknowledged that Claimant's colitis was uncontrolled at times due to medication lapses. However, Claimant responded well to Humira and Entyvio, until her insurance declined to cover Entyvio, and she subsequently responded well to Skyrizi. *See Sutton v. Berryhill*, No. 5:17-CV-48-FL(2), 2017 WL 7053966, at *4 n.3 (E.D.N.C. Dec. 19, 2017) (noting that treatment notes the plaintiff submitted after the ALJ's decision contained evidence that symptoms improved with medication), *report and recommendation adopted*, 2018 WL 576847 (E.D.N.C. Jan. 26, 2018). While Claimant reported to her doctor that she continued to experience 4–6 loose stools a day, (R. 30), the ALJ did allow for some time off task due to the need to use the restroom but found that it would not exceed 10% of the workday

11

along with customary breaks, which the VE testified was within the tolerance allowed by employers. (R. 22, 86–88). In *Ronda C. v. Bisignano*, the court rejected the argument Claimant asserts here—that the ALJ failed to make adequate findings regarding the frequency and duration of the need for bathroom breaks—where the ALJ determined that routine employer-provided breaks would accommodate the claimant's need for bathroom access. No. 1:24CV493, 2025 WL 2689046, at *10 (M.D.N.C. Sept. 19, 2025) (collecting cases holding the same).[2] Furthermore, this case is distinguishable from *Dowling v. Comm'r of Soc. Sec. Admin.*, a case in which the Fourth Circuit identified multiple fatal errors in the ALJ's decision, among them that "the ALJ failed to analyze whether Appellant's RFC was impacted by her need to work near a restroom and take frequent bathroom breaks." 986 F.3d 377, 389 (4th Cir. 2021). Here, the ALJ did analyze whether Claimant's RFC was impacted by the need to use the restroom and determined that it was not. (R. 19–22). Accordingly, *Dowling* does not dictate remand in this case, and the court can trace the ALJ's time-off-task analysis and finds it is supported by substantial evidence.

## B. Absences Due to Flares and Treatment

Claimant argues that the ALJ did not adequately consider the number of times she would be absent from work due to flares or treatment for her fistulas and Crohn's colitis, noting that she had 34 days of treatment visits over a 17-month period from her alleged onset date through the

---

[2] The plaintiff in *Rhonda C.*, relied on many of the same cases cited by Claimant here, including *Summey v. Berryhill*, No. 1:16CV1185, 2018 WL 708355, at *3 (M.D.N.C. Feb. 5, 2018), which found the ALJ's requirement for access to a bathroom "as needed" was insufficient, and *Taylor v. Astrue*, No. 7:11-CV-162-FL, 2012 WL 3637254, at *11 (E.D.N.C. Aug. 1, 2012), *report and recommendation adopted*, 2012 WL 3636923 (E.D.N.C. Aug. 22, 2012), where the ALJ made no findings regarding the extent of required unscheduled bathroom breaks and did not question the VE as to his definition of "excessive." However, those cases are distinguishable from the instant case, where here the ALJ specifically allowed for 10% time off task for restroom breaks and fully discussed with the VE the tolerable limit of unscheduled breaks.

ALJ's decision. Pl.'s Br. [DE-9] at 23–26. However, as explained above, the ALJ thoroughly discussed Claimant's treatment history, including medical procedures, and determined that her symptoms from perianal Crohn's disease were well-controlled after her June and August 2023 procedures and her colitis was improved after medication adjustments. The ALJ also found Dr. Payne's May 2023 opinion that Claimant's Crohn's disease required frequent office and hospital or operating room visits to be unpersuasive due in part to Claimant's subsequent improvement in her symptoms. (R. 22). This distinguishes the instant case from *Dennis v. Kijakazi*, cited by Claimant, which was remanded because the ALJ did not discuss evidence in the record supporting the plaintiff's need to miss work, such as multiple hospitalizations and medical treatments, and "did not offer any reasons for rejecting or discounting the frequency of Dennis' medical treatment." *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *5 (4th Cir. Apr. 14, 2023). Furthermore, Claimant testified that, after three initial infusions of Skyrizi, she would transition to a self-administered shot at home. (R. 83). Accordingly, the court can trace the ALJ's reasoning and finds no error in the failure to account for absences due to flares or treatment in the RFC.

### C. Off Task Time Due to Fatigue and Naps

Claimant argues that the ALJ erred by failing to account for her need to take nap breaks during the day for 15–20 minutes due to fatigue. Pl.'s Br. [DE-9] at 26. The ALJ acknowledged Claimant's testimony that she experienced fatigue for years and that she sometimes naps for 15–20 minutes a day, and the ALJ noted that she previously reported daytime sleepiness in 2014 and was placed on Adderall, (R. 21, 74, 82, 754). The ALJ also considered a December 5, 2022 treatment note indicating that Claimant's main complaint was fatigue and that she has to nap most afternoons. (R. 19–20, 416).

Claimant's treatment notes reflect that she was positive for fatigue intermittently in 2023

13

and 2024, (R. 413, 654, 687, 779, 868), including in a July 18, 2024 post-decision record, (R. 30); however, subsequent treatment notes make no mention of fatigue, (R. 39–47). The ALJ concluded that any time off task due to fatigue or tiredness "would be addressed within customary work tolerances, which the vocational expert testified is no more than 10% of the workday along with customary breaks." (R. 22). The ALJ considered evidence related to Claimant's complaints of fatigue, and it is not the court's role to re-weigh the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ."). Claimant did not testify that she required a nap every day; rather, she testified that she may get a 15–20-minute nap but she does not "get to nap a whole lot," (R. 74), and the ALJ did account for some time off task for fatigue and tiredness. Accordingly, the court can trace the ALJ's reasoning regarding time off task due to fatigue and finds no error.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, this the 3rd day of December, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge